UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

David William Moran,

                        Plaintiffs,

                                                    **Hon. Hugh B. Scott**
                                                    05-CV-459S

                        v.                                         Decision
                                                             &amp;
                                                             Order

deSignet International, et al.,

                        Defendant.

_____

Before the Court is the plaintiff's motion to compel discovery; joinder of parties and the amendment of the complaint. (Docket No. 32).

## Background

The plaintiff, David William Moran ("Moran") commenced this action alleging breach of contract and copyright infringement claims. Moran asserts that he created a design as "a family crest" to be used on his wedding rings for he and his wife, as well as on rings for their children, broaches for their mothers, money clips for their fathers and on the wedding cake. (Docket No. 32 at ¶ 5). Moran hired deSignet International ("deSignet")[1] to create the jewelry. According to

---

[1] The plaintiff alleges that deSignet is an assumed name used for business purposes by RARU.COM INC. ("RARU"). The plaintiff further alleges that RARU is wholly owned by Reg Medicott Schopp ("Schopp"). (Docket No. 1 at ¶ 15).

Moran, Reg Medicott Schopp ("Schopp"), asked to purchase the design from Moran, but Moran refused to sell. The plaintiff asserts that Schopp promised not to use the design for anyone else. (Docket No. 1 at ¶ 10). Moran claims that he subsequently discovered that deSignet's website offered rings for sale under the names "Waterford Knot," "Kenmare Knot," and "Kenmare with Cross and Knot Bands" that are derivatives of Moran's design. (Docket No. 1 at ¶¶ 41-46).

The defendants acknowledge that they had offered to waive the "set-up" charge if the plaintiff would allow them to offer Moran's design for sale and that Moran refused the offer. (Docket No. 35 at ¶ 4). According to defendants, Schopp advised Moran that there was limited copyright protection of many Celtic designs in light of the extensive public domain of such designs. Id. The defendants also assert that the designs identified by Moran as derivative of his design, are instead based upon different designs that are in the public domain. For example, the Kenmare designs is "a copy of a knot long in the public domain originally from the Book of Kells, an acient illustrated manuscript thought to be produced by Celtic monks in approximately AD 800."(sic) (Docket No. 35 at ¶ 7). Further, the defendants contend that Moran's design is not original, but instead was a derivative of a design contained in a 1991 book by Aidan Meehan. (Docket No. 35 at ¶¶ 8-11). The defendants assert that the plaintiff was aware of the Meehan design and that the plaintiff "deliberately and fraudulently misrepresented the origin of the substance of his design." (Docket No. 35 at ¶ 12).

**Motion to Compel**

The plaintiff seeks to compel discovery of documents and responses to interrogatories. Initially, the plaintiff asserts that the defendants failed to provide the initial disclosure required

under Rule 26 of the Federal Rules of Civil Procedure.  The plaintiff points out that significant delay has transpired in this case, mostly attributable to the fact that the defendants have changed counsel at least twice in this matter.  Notwithstanding representations from the current and former counsel for the defendants, the plaintiff asserts that he still has not been provided with the Rule 26 disclosure.  The defendant contends that Rule 26 disclosures have been made.  The plaintiff's arguments regarding the Rule 26 disclosure focus on the defendants' failure to produce a copy of any insurance policy which might cover a copyright infringement claim against the defendants. (Docket No. 32 at ¶¶16-17).  The defendants do not dispute the fact that information relating to any insurance policies was not produced with the initial Rule 26 materials.  If not already produced, the defendants shall produce a copy of all such relevant insurance policies to the plaintiff within 15 days of the date of this order.

The plaintiff also asserts that the defendants' responses to the First Request for the Production of Documents to Schopp and RARU are also insufficient.  Moran claims that the defendants produced three "folders" of documents but did not provide a cover letter or other explanation of what was being produced and to which discovery requests the production was to be attributed. (Docket No. 32 at ¶¶ 23-25).   The plaintiff suggests that RARU's production of sales data information was insufficient in that only three untitled pages of data was provided.  Further, Moran claims that it received information relating only to the sales of "Kenmare" rings, but not the "Waterford" design or other designs containing  "symbolic heart elements." (Docket No. 32 at ¶¶ 30-31).  Finally, the plaintiff asserts that the defendants have failed to produce the jewelry molds requested in discovery. (Docket No. 32 at ¶¶ 33-40).

It appears that just prior to oral argument on April 2, 2008, the defendants produced

3

additional documents responsive to the plaintiff's demands.  The plaintiff did not have an opportunity to review those documents prior to argument. The Court directed that the plaintiff review the documents and advise the Court of what discovery issues remained. In a post-argument filing, the plaintiff contends that the defendants have still failed to organize or label any production of documents. (Docket No. 39 at ¶ 6).   Further, the plaintiff states that the defendants have agreed to provide documents "responsive to 6 of plaintiff's 24 document requests" which remain outstanding, but which to date have not been received. (Docket No. 39 at ¶¶ 5).  However, the papers do not identify which requests remain outstanding.  The scope of unresolved discovery issues is not clear from the record in this case.  The motion to compel the production of documents is denied without prejudice. Further, correspondence between the parties dated May 9, 2008 reflects that almost all discovery issues have been resolved.  If necessary, the plaintiff may submit a renewed motion to compel which identifies specific document requests that remain outstanding.

Similarly, the plaintiff moves to compel the production of several documents identified at the depositions of Schopp, Kim Schopp and Robert Kopf. (Docket No. (Docket No. 32 at ¶ 57). In his post-argument memorandum, the plaintiff asserts that the following remain outstanding:  7 of 13 of the documents from Schopp; 7 of 10 from the deposition of Kim Schopp; and 1 of 4 from the deposition of Kopf. (Docket No. 39 at ¶¶ 4). Once again, the plaintiff's papers to not specify which documents remain outstanding.

The plaintiff also seeks to compel further responses to interrogatories 3, 7, 8, 9, 10, 11, 12, 16, 17, 18 and 19. (Docket No. 39 at ¶ 10). Some of the interrogatories posed appear to call for subjective interpretation.  For example, in Interrogatory No. 7, the plaintiff asks the

defendants to "describe the similarities and differences" of various Celtic designs.  Such questions involving aesthetic interpretation may be better explored in depositions.  The Court has reviewed each of the challenged interrogatories:

> Interrogatory No. 3 – The plaintiff contends that the defendants response is not complete because the defendants failed to identify who made the rubber molds, who was responsible for collection and payment, and who communicated with the customer.  If the defendants have records from which this information can be obtained, the information should be provided to the plaintiff.
>
> Interrogatory No. 7 – As discussed above, this question calls for a subjective response.  The defendants' response is sufficient.
>
> Interrogatory No. 8 – The plaintiff asks the defendants to identify "all facts and documents that support [defendants] belief, as stated in ¶58 of [the] answer, that [the plaintiff's] copyright has not been infringed."  The plaintiff argues that the defendants response to this interrogatory is incomplete because it fails to identify information referred to in ¶¶ 62, 65 and 66 of the Answer.  Once again, it would seem that such clarification would be more appropriately explored in a deposition.  In any event, the interrogatory does not ask the plaintiff about the information contained in any ¶ other than ¶58.  The defendants' response is sufficient.
>
> Interrogatory No. 9 – In their Answer, the defendants asserted that the plaintiff's copyright was invalid in that a necessary author of the work was not recited (¶ 59), and that plaintiff's design was "taken from defendants' prior artistic work ... and from well known public sources, including a 1997 book by Sheila Sturroch entitled Celtic Knotwork Designs" (¶ 62).   The plaintiff asks the defendants to identify the authors of not recited (as referred to in (¶ 59), and the prior art referenced in ¶ 62).  The defendants responded that "RARU believes that Mr. Moran copied his design from existing sources including the Strurroch and Meehan tests previously noted and produced."  If not already done, the defendants are directed to supplement this response by providing more specific references by author, publication and page number as to any design claimed to be the prior artistic work from which the plaintiff allegedly copied.
>
> Interrogatory 10 – The plaintiff seeks "all facts and documents" supporting the defendants' contention that Moran was aware that defendants "advertised and sold custom Celtic knot work rings containing interwoven arrangements containing symbolic heart elements."  The defendants responded that the "belief is based on statements made by Plaintiffs."  The defendants are directed to identify the substance of the alleged statement by the plaintiff, and the circumstances (date, location, who was present) when the statement was made.

Interrogatory 11 – The plaintiff asks the defendants to identify all designs which are the basis of defendants' contention that Moran's design is not original. The defendants objected to the interrogatory as being overly broad, but cited to the Sturroch and Meehan texts, and further referred the plaintiff to the "button selection at Joann Fabrics." The interrogatory is not overly broad, but asks the defendants to identify the basis of their claim that Moran's design is not original. It may be that the information provided by the defendants is the only information upon which the defendants' assertion is based. If the defendants' contention that Moran's design is not original is based upon other designs, the defendants are directed to supplement their response to identify any such additional designs.

Interrogatory 12 –  The plaintiff asks the defendants to identify "the source of each element and symbol used in sculpting Goods for Plaintiff, referred to in [¶ 62 of defendants' Answer], including those elements and symbols, if any taken from Plaintiff's design." The defendants objected to the interrogatory as "unclear" but referred to the design submitted by Moran and the Triquerra knot and the heart. The plaintiff asserts that this response is insufficient. Again, it may be that the only designs consulted by the defendants in producing the jewelry for Moran were the designs submitted by Moran and the Triquerra knot and heart. If the defendants utilized other designs in creating the jewelry for Moran, the defendants are directed to supplement their response to identify any such additional designs.

Interrogatory No. 16 – The plaintiff asks the defendants to identify the names, dates and subject matter of communications had with an attorney concerning the rights to the designs underlying this action, or the right to make derivatives of such designs. The defendants stated a general objection to the interrogatory to the extent it seeks privileged information, but then provided information regarding its communications with Harold Bulan, Esq. The plaintiff argues that the defendants may not assert the attorney-client privilege with respect to the opinion of counsel regarding rights, ownership or non-infringement of the designs in question. Again, the defendants response may be complete. If there is additional responsive information regarding advice from an attorney as to the rights to the designs underlying this action (or any derivatives), the defendants shall supplement their interrogatory response.

Interrogatory No. 17 – The plaintiff asks the defendants if a search of the copyright records was performed concerning the designs in this action. The defendants responded that "RARU does not know at this time if any search was done on its behalf. RARU did not perform a search."  In responding to this interrogatory, the defendants are required to determine whether they searched the copyright records, or caused a search of the copyright records on their behalf. The defendants are directed to supplement this response with information as to whether they caused a search of the copyright records within the relevant time frame relating to the designs underlying this action.

Interrogatory No. 18 – The plaintiff asks the defendants to state "the cost of fulfilling Plaintiff's order, including any allocations of fixed costs." The defendants responded with details of its pricing of each of the pieces of jewelry; the cost of specific services; and the cost of materials per pennyweight. In allocating costs, the defendants stated that "in most cases" materials are ⅓ of the cost, labor is ⅓ of the cost, and operating costs are the remaining ⅓ of the cost. The plaintiff objects to the response stating that he asked for the allocation "in this case" not "in most cases." It is not certain that the defendants can extract the administrative costs of processing the plaintiff's order with more specificity. If such information can be extracted, it should be provided. Otherwise, this response is sufficient.

Interrogatory No. 19 – The plaintiff asks the defendants to identify "all facts and documents concerning income and expenses from jewelry [defendants] sold which include designs which include interwoven arrangements containing symbolic heart elements separated into before March 3, 2000 and thereafter." The defendants objected to the interrogatory as overly broad and burdensome. The Court agrees. The plaintiffs have not established the relevance of information other than that relating to the sale of jewelry containing the specific design to which the plaintiff claims copyright protection. The defendants need not respond to this interrogatory.

The plaintiff also seeks sanctions and costs with respect to making the motion to compel. It appears that the defendants substantially complied in good faith with the plaintiff's discovery demands. Some of the unresolved issues may fairly be attributable to requests which were arguably over broad or subject to a variety of interpretation. It appears that other information was withheld pending the parties negotiation of a confidentiality agreement (which was submitted for Court approval by cover letter dated April 30, 2008). The Court declines to award sanctions or costs at this time.

**Motions to Amend Pleadings**

Both parties seek to amend the pleadings in this case. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure:

> A party may amend the party's pleading once as a matter of course

>   at any time before a responsive pleading is served, or if the
>   pleading is one to which no responsive pleading is permitted and
>   the action has not been placed on the trial calender, the party may
>   so amend it at any time within 20 days after it is served.  Otherwise
>   a party may amend the party's pleading only by leave of court or
>   by written consent of the adverse party; and leave shall be freely
>   given when justice so requires.

Although it is within the Court's discretion to grant or deny the amendment of a pleading under the second sentence of Rule 15(a), the Supreme Court in <u>Foman v. Davis</u>, 371 U.S. 178 (1962) stated:

>   Rule 15(a) declares that leave to amend 'shall be freely given when
>   justice so requires;' this mandate is to be heeded.  If the underlying
>   facts or circumstances relied upon by a plaintiff may be a proper
>   subject of relief, he ought to be afforded an opportunity to test his
>   claim on the merits.  In the absence of any apparent or declared
>   reason--such as undue delay, bad faith or dilatory motive on the
>   part of the movant, repeated failure to cure deficiencies by
>   amendments previously allowed, undue prejudice to the opposing
>   party by virtue of allowance of the amendment, futility of
>   amendment, etc.--the leave sought should, as the rules require, be
>   'freely given.'"

<u>Foman</u>, 371 U.S. at 178.  See also <u>Oliver Schools, Inc.  v.  Foley</u>., 930 F2d. 248 (2dCir. 1991). Although leave to amend need not be granted where a proposed amendment would be "futile," the Second Circuit has held that the standard against which the proposed amendment is measured is not high.  In <u>Ricciuti v.  N.Y.C. Transit Authority</u>, 941 F.2d.  119 (2d Cir. 1991), the Court stated:

>   When the plaintiff has submitted a proposed amended complaint,
>   the district judge may review that pleading for adequacy and need
>   not allow its filing if it does not state a claim upon which relief can
>   be granted.  The adequacy of the proposed amended complaint,
>   however, is to be judged by the same standards as those governing
>   the adequacy of a filed pleading.  Rule 8(a) requires "a short and
>   plain statement of the claim showing that the pleader is entitled to
>   relief," ...   Thus, the court should not dismiss the complaint for

> failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," ... and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met.

Ricciuti, 941 F.2d. at 123 (citations omitted).

"To establish a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." Twentieth Century Fox Film Corp. v. Cablevision Systems Corp., 478 F.Supp.2d 607, 617 (S.D.N.Y.,2007) citing Byrne v. British Broad. Corp., 132 F.Supp.2d 229, 232 (S.D.N.Y.2001); Twin Peaks Prods. v. Publ'ns Int'l. Ltd., 996 F.2d 1366, 1372 (2d Cir.1993)); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The plaintiff seeks to amend the complaint to add several individuals as direct and indirect infringers. The law frames such liability as contributory and vicarious infringement. To establish contributory (direct) infringement, the plaintiff must show that the proposed individual defendants "authorized the [infringing] use." Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 971 ( 2d Cir. 1997) citing Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984); see also J & J Sports Productions, Inc. v. Rodrigues, 2007 WL 1726462, *8 (E.D.N.Y.,2007)(same); Kingvision Pay-Per-View, Ltd. v. Castillo Restaurant Corp., 2007 WL 841804, *7 (E.D.N.Y.,2007) . To establish vicarious (indirect) liability, the plaintiff must allege that the proposed defendants had a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." Softel, 118 F.3d. at 971 quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963)("[E]ven in the absence of actual knowledge that the

9

copyright monopoly is being impaired ... the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of the exploitation"). See also Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc., 2006 WL 2853874, *4 (E.D.N.Y.,2006)(As the sole owner of Bobby Music, Akhtar had both a direct financial interest in the store's activities, and had the right and ability to supervise the contractor's activities, such that Akhtar could be held vicariously liable.); Capitol Records, Inc. v. Wings Digital Corp., 218 F.Supp.2d 280, 285 (E.D.N.Y.2002) (finding that defendant could be held liable for vicarious liability where complaint alleged that he "was the sole shareholder who managed and financially benefitted from the production and sale of the acts of copyright infringements"); Peer Int'l Corp. v. Luna Records, Inc., 887 F.Supp. 560, 565 (S.D.N.Y.1995) ("Individuals who have the right and ability to supervise infringing copyright and a direct financial interest in such activities are not shielded from liability even though they have no actual knowledge of the infringement."); Shady Records, Inc. v. Source Enterprises, Inc., 2005 WL 14920, *23 (S.D.N.Y.,2005) (Directors and officers may not be held liable based solely on a theory of control of the corporate entity, but "[a]ny individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for that infringement.").

  Moran seeks to name Kimberly Schopp, Robert Kopf ("Kopf"), and Roman Jurga ("Jurga") as both contributory and vicarious infringers. (Docket No. 32 at ¶¶60-77). Further, the plaintiff proposes to add Elizabeth Cali ("Cali") and Michael Schopp as vicarious infringers. (Docket No. 32 at ¶¶78-83). With respect to Kimberly Schopp, Moran alleges that she participated in the infringing conduct by photographing and posting infringing items for sale

online and by performing certain bookkeeping functions relating to the sale of allegedly infringing products. The plaintiff also alleges that Kimberly Schopp is vicariously liable as an officer and shareholder of RARU, who allegedly has control over the activities of the corporation and directly benefits from the sales. (Docket No. 32 at ¶ 60, 64). Kopf is also alleged to be an officer and shareholder of RARU. Further, the plaintiff asserts that Kopf actually made the allegedly infringing design (Docket No. 32 at ¶¶ 67-68). According to the plaintiff Jurga is also an officer and shareholder in RARU who was responsible for molding and casting the allegedly infringing jewelry. (Docket No. 32 at ¶¶ 72-77). With respect to both Cali and Michael Schopp, Moran alleges that they are shareholders, and possibly directors, of RARU and that they have "control over the activities of [RARU] and directly benefit from the sales and profits of the corporation." (Docket No. 32 at ¶¶ 78-79; 81-82). The defendants assert that "none of the proposed new defendants is in any kind of a supervisory position" and that none "had any knowledge of any alleged infringement." (Docket No. 35 at ¶ 20). At this stage, in making a determination as to the sufficiency of the proposed Amended Complaint, the Court is constrained to presume the facts alleged by the plaintiff as true. As noted above, knowledge of the infringing activity is not necessarily required for vicarious liability. Shady Records, Inc. v. Source Enterprises, Inc., 2005 WL 14920, *23 (S.D.N.Y.,2005). Whether the newly proposed individual defendants possessed the ability "to authorize" the allegedly infringing activity or had sufficient supervisory control over the activities of the corporation is certainly open to question. The Court cannot say, based upon the record, that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ricciuti, 941 F.2d. at 123.

The motion to amend the complaint is granted. Inasmuch as the newly proposed defendants have already been subjected to deposition, it does not appear that the addition of these individuals as parties will necessitate a significant extension of discovery in this case.  The motion to amend the answer to add an affirmative defense that the copyright was granted upon fraudulent information is similarly granted.[2]  An Amended Complaint shall be filed by the plaintiff within 15 days of the date of this order.  The defendants shall file an answer, or otherwise move, as to the Amended Complaint within 15 days of the filing of the Amended Complaint.

**Remaining Issues**

At or shortly after a mediation session, the plaintiff produced a document referred to by the parties as "Saa 5." The defendants attached a copy of the document to their response to the instant motion to compel. (Docket No. 35 at Exhibits D and E).  The plaintiff contends that the document was produced in connection with a mediation session and may not be used for any other purpose by the defendants.  The defendants contend that the document was identified at a mediation session and should have been produced in response to a prior discovery request; that the plaintiff acknowledged that the defendants were entitled to the document in discovery; that no reservation or limitation of the use of the document was discussed or agreed upon; and that the plaintiff produced a copy of the document the day after the end of the mediation session.

---

[2] The plaintiff contends that the motion should be denied as "redundant" inasmuch as the affirmative defenses already pled would cover the alleged intentional conduct which is the basis of the newly proposed defense. (Docket No. 37 at ¶ 28). Inasmuch as the plaintiff is to file an Amended Complaint, the defendants must file a new answer. Moreover, the plaintiff has failed to articulate any prejudice to the proposed amendment.

(Docket No. 40 at ¶¶ 18-19).  Neither party presented authority in support of their respective positions.  During oral argument, the plaintiff acknowledged that the defendants would have been entitled to obtain the document in a discovery request, but that no discovery request calling for the production of this document was articulated by the defendants.  Thus, the parties dispute whether the defendants made a prior discovery request for which Saa 5 would have been responsive.  Under the circumstances in this case, inasmuch as the plaintiff acknowledges that the document was discoverable, and it does not appear that the parties discussed or agreed to any limited or restricted use of the document prior to its production, the defendants may use the document for any purpose in connection with this litigation.

The plaintiff had sought an order declaring that it is fair use for plaintiff's attorneys to use any software provided by defendant which enables plaintiff to review digital material produced by defendants. It is not apparent as to whether this remains at issue.  In any event, pursuant to 17 U.S.C. §107, the Court finds that use of the software for the necessary and limited purpose of accessing information disclosed during the discovery phase by a party in litigation falls within the fair use exception.  "The fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Fair use exists as an affirmative defense to copyright infringement. <u>Louis Vuitton Malletier, S.A. v. Haute Diggity Dog, LLC</u>, 464 F.Supp.2d 495 (E.D.Va.2006); <u>Tavory v. NTP, Inc.</u>, 495 F.Supp.2d 531, 538 (E.D.Va.,2007). In making this determination, the Court examines: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or

value of the copyrighted work. 17 U.S.C. § 107 . Upon due consideration of these factors, the Court finds that the litigation-related need for use of the software – to access information produced by the defendants is quite limited and would have no effect upon the potential market for or value of the copyrighted work.

The plaintiff also seeks to strike certain language from the defendants' response as constituting an "*ad hominem attack.*" The plaintiff points to the defendants' allegations that the plaintiff "has not been truthful" and "has deliberately and fraudulently misrepresented the origin of" his design. (Docket No. 37 at ¶ 45). This language serves as the basis of the defendants' proposed affirmative defense. The motion to strike is denied.

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
May 16, 2008