UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

David William Moran,

                              Plaintiffs,

                                                              **Hon. Hugh B. Scott**
                                                              05CV459S

                       v.

                                                               **Report**
                                                                **&**
                                                               **Recommendation**

deSignet International, et al.,

                              Defendant.
_____

       Before the Court is the defendants' motion for summary judgment (Docket No. 62).

**Background**

       The plaintiff, David William Moran ("Moran") commenced this action alleging breach of contract and copyright infringement claims. Moran asserts that he created a design, referred to herein as the "Moran Knot," and registered the copyrights for the design with the Library of Congress, registration number V Au-497-855, on March 20, 2000. (Docket No. 44 at ¶ 3; Exhibit B). The Moran Knot was to be used as "a family crest" incorporated into wedding rings for the plaintiff and his wife, as well for rings for their children, other forms of jewelry for their parents (Docket No. 44 at ¶ 25).

       The plaintiff alleges that on March 3, 2000, he contacted deSignet International

1

("deSignet")[1] by email to ask if they could take a design of his and create jewelry. (Docket No. 44 at ¶ 22). DeSignet agreed to create the jewelry using the Moran Knot for Moran. According to the plaintiff, Reg Medicott Schopp ("Schopp"), asked if he could purchase the design of the Moran Knot from the plaintiff, but Moran refused to sell any rights to the design. (Docket No. 44 at ¶24). It appears that the Morans first brought their design to deSignet on Saturday, March 4, 2000. (Docket No. 62-7 at ¶ 3).

The plaintiff asserts that on April 8, 2000, and again on March 31, 2005, the defendants violated his copyright in the Moran Knot by offering rings for sale utilizing designs described as the "Waterford Knot," the "Kenmare with Cross Knot" or the "Kenmare Knot." (Docket No. 44 at ¶¶46-52). The plaintiff claims that the Waterford Knot, the Kenmare with Cross Knot and the Kenmare Knot are derivatives of the Moran Knot. (Docket No. 44 at ¶¶ 47, 51, 52).[2]

The defendants assert that since the mid-to-late 1990s, deSignet developed expertise in creating jewelry utilizing age old Celtic knot designs. Defendant Robert Kopf ("Kopf") was the primary designer acquiring expertise in Celtic knot designs. He asserts that he relied extensively upon a book entitled Celtic Art: The Methods of Construction by George Bain. (Docket No. 62-

---

[1] The plaintiff alleges that deSignet is an assumed name used for business purposes by Raru.com, Inc. ("Raru"). The plaintiff further alleges that Raru is wholly owned by Reg Medicott Schopp ("Schopp"). (Docket No. 44 at ¶¶ 15-16). Also named as defendants in this action are Kimberly Ann Schopp, Robert Kopf, Elizabeth Cali, Roman Jurga and Michael Schopp. Notwithstanding the plaintiff's assertion that Raru is "wholly-owned" by Reg Schopp, Moran alleges that each of these individuals (who apparently work at deSignet) are also shareholders of Raru. (Docket No. 44 at ¶¶ 17-21).

[2] The plaintiff also asserts a replevin claim seeking all molds, plates, forms, and castings which contain, incorporate or are based upon the Moran Knot. (Docket No. 44 at ¶¶ 60-62). Finally, the plaintiff asserts a breach of contract claim against Schopp based upon Schopp's alleged promise not to use the Moran Knot design for anyone other than the plaintiff. (Docket No. 44 at ¶¶ 63- 69).

7 at page 1). Bain's book is said to include hundreds of the Celtic designs contained in the "Book of Kells" an ancient Celtic text published circa 800 A.D. From 1997 to March 3, 2000, Kopf states that he created at least 25 Celtic designs taken directly from the Bain book. (Docket No. 62-7 at pages 2-5). The following is alleged to be a knot from the Book of Kells set forth at page 111 of the Bain book:



Docket No. 62-10 at page 1.

The defendants assert that the Kenmare and Waterford knots, which the plaintiff contends are derivative of the Moran Knot, are actually the same knot based upon the knot illustrated at page 111 of Bain's book (Docket No. 62-10 at page 7). The following is a representation of the Kenmare Knot as produced by the defendants:



Docket No. 62-10 at page 2.

The following is a representation of the Moran Knot:



Docket No. 62-10 at page 2. The illustrations of the Waterford, and Kenmare Knots, depicted

above are consistent with the illustrations included in the plaintiff's papers (Docket No. 66 at pages 6-8).[3]

The defendants acknowledge that the Moran Knot was "new" to them in two respects: (a) they had not seen a heart interwoven into a tri-knot; and (b) they had not seen two triangle knots combined point to point to form the distinctive "bow tie" look of the Moran Knot. (Docket No. 62-6 at ¶ 5). Schopp admits that he asked the plaintiff if he would allow deSignet to offer Moran's design for sale and that Moran stated that he did not want the design offered to the public. (Docket No. 62-6 at ¶ 6). Schopp states that he assured Moran that they would honor his request, but advised him that he believed Celtic designs had limited copyright protection because there is so much work that was already in the public domain. (Docket No. 62-6 at ¶6).

It is undisputed that Schopp first met with Moran and discussed the Moran Knot on March 4, 2000. Kopf asserts that at some date "no later than March 6, 2000" he created the Kenmare Knot based upon the illustrations in the Bain book. (Docket No. 62-7 at ¶ 2). Kopf states that he was not at the Saturday, March 4, 2000 meeting with Schopp and Moran, and that he does not know if he saw Moran's design when he went into work on March 6, 2000 (the last date he alleges that he could have completed work on the Kenmare design). (Docket No. 62-7 at ¶ 3).

Subsequent to the March 4, 2000 meeting, deSignet offered the Kenmare design for sale on its website. The plaintiff objected. The defendants contend that although they believed the Kenmare design was in the public domain, they removed the Kenmare items from their website

---

[3] Unless otherwise distinguished, the Waterford, Kenmare and Kenmare with Cross Knot are referred to herein collectively as the "Kenmare" knot or design.

at that time. (Docket No. 62-6 at ¶ 7). It appears that items with the Kenmare were again posted on deSignet's website in 2002. The plaintiff commenced this action claiming copyright infringement in 2005. The defendants deny that the Kenmare design is derivative of the Moran Knot. Further, the defendants contend that Moran's design is not original, but instead was a derivative of a design contained in a 1991 book by Aidan Meehan. (Docket No. 35 at ¶¶ 8-11). Based upon this information, the defendants have asserted a counterclaim alleging that the plaintiff fraudulently misrepresented the origin his design to the Copyright Office (Docket No. 54 at ¶¶81-86).[4]

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

---

[4] The instant motion does not address the defendant's counterclaim. (Docket No. 62-10 at page 7).

> when its resolution would "affect the outcome of the suit under the
> governing law" and a dispute about a material fact is genuine "if
> the evidence is such that a reasonable jury could return a verdict
> for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Copyright Protection**

To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."

6

Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d. Cir. 2001).[5] "To qualify for copyright protection, a work must be original to the author." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). The requisite level of originality is extremely low-"even a slight amount will suffice." Feist, 499 U.S. at 345. Even if the elements used in the work are not protectible standing alone, protection extends to the selection and arrangement of those unprotected elements in the final work, as long as the author's selection and arrangement are original. Feist, 499 U.S. at 348 ("[E]ven a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement."); Yurman Studio, Inc. v. Castaneda, 591 F.Supp.2d 471, 494 (S.D.N.Y.2008).

To prove actionable copying, a plaintiff must first show that plaintiff's work was actually copied. Under the Copyright Act, one may market a product identical to a copyrighted work so long as the second comer designed his product independently. Feist, 499 U.S. at 345-46 ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."). A court may infer copying in the absence of direct evidence if the plaintiff demonstrates (a) substantial similarities between the two works; and (b) that the defendant had access to the copyrighted work. Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir.1992). In the determination of

---

[5] The plaintiff must also ordinarily prove that he possesses a valid copyright. Judith Ripka Designs, Ltd. v. Preville, 935 F.Supp. 237, 246 (S.D.N.Y.,1996). In the case at hand, the defendants assert, by counterclaim, that the plaintiff's copyright is invalid inasmuch as Moran failed to properly advise the Copyright Office that his design was derivative of another design. The issues surrounding the validity of the plaintiff's copyright are not raised in the instant motion. Thus, for the purposes of this motion, the Court must assume that the plaintiff owns a valid copyright in the original elements of the Moran Knot design.

whether actual copying occurred, "substantial similarity" means similarity between protected and unprotected elements of the work being considered. Access may be inferred when a defendant had a reasonable opportunity to view the plaintiff's work before creating its own. Gaste v. Kaiserman, 863 F.2d 1061, 1066-67 (2d Cir.1988); see also ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 998 (2d Cir.1983). Access may be inferred if the article alleged to infringe is strikingly similar to the copyrighted piece. Judith Ripka Designs, Ltd. v. Preville, 935 F.Supp. 237, 246 (S.D.N.Y.,1996).

The court must also determine whether the alleged copying constituted infringement.[6] To prove infringement, a plaintiff must demonstrate substantial similarity between protected elements of its work and the work of the defendant. Laureyssens, 964 F.2d at 141; Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir.1976), cert. denied, 429 U.S. 980 (1976). Under the "ordinary observer test," substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 137 (2d. Cir. 1998). Summary judgment is appropriate where "the similarity between the two works concerns only 'non-copyrightable elements of the plaintiff's work,' or because no reasonable jury, properly

---

[6] Copyright protection does not extend to functional elements of Plaintiff's jewelry, such as the use of toggle bar and ring closures and rondels which unscrew and attach to pearls. Furthermore, copyright protection extends to expressions of an idea, not to the idea itself. Mazer v. Stein, 347 U.S. 201, 217 (1954); Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., 378 F.Supp. 485 (S.D.N.Y.), aff'd, 509 F.2d 64 (2d Cir.1974). Thus, if a defendant has not copied something protected by the copyright laws-specifically, the plaintiff's expression of his ideas-then his copying will not subject him to liability. Judith Ripka Designs, Ltd., 935 F.Supp. at 247. Protection thus cannot extend to the "idea" or the "concept" which lies behind the plaintiff's jewelry, but only to the expressions of those ideas contained in the disputed pieces themselves. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir.1960).

instructed, could find that the two works are substantially similar." Warner Bros. Inc. v. Am. Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983) (citations omitted); Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.), cert. den. 449 U.S. 841(1980).

The Second Circuit discussed the meaning of "substantial similarity" in Knitwaves, Inc. v. Lollytogs, Ltd. (Inc.) d/b/a French Toast, 71 F.3d 996 (2d Cir.1995), a case concerning copyright protection for fabric design. In Knitwaves, the Court compared products containing both protectible and unprotectible elements. In such a case, the Second Circuit explained,

> our inspection must be "more discerning"; we must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar.

Knitwaves, Inc., 71 F.3d at 1002. According to the Second Circuit, in this regard, "[w]hat is protectible ... is 'the author's original contributions,' ... the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves, Inc., 71 F.3d. at 1004 (citations omitted). The Second Circuit has further counseled that a "court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." Boone v. Jackson, 206 Fed.Appx. 30, 33 (2d. Cir. 2006) quoting Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134-35 (2d Cir.2003). This is because a defendant may infringe a copyright not only by literally copying a portion of a work, but also by "parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in

relation to one another." Boone, 206 Fed.Appx. at 134.

The plaintiff does not dispute that the knot from the Book of Kells, as depicted at page 111 in Bain's book, is in the public domain. The plaintiff does not dispute that deSignet, and others had produced jewelry using Celtic designs prior to being approached by the plaintiff. The plaintiff has not articulated any differences between the Kenmare Knot and the knot from the Book of Kells. Instead, the plaintiff asserts that the defendants modified his design by taking "the tips of the hearts on the Moran design, which are just/nearly touching each other, and joined them, fully connecting the threads leading into the next repeat of the pattern; and also rounded off the more pointed two ends of the triknots/triangle knots of the Moran design." (Docket No. 66 at page 7). The plaintiff points to the proximity between the March 4, 2000 meeting of Moran and Schopp and Kopf's statement that March 6, 2000 is the latest date on which he created the Kenmare design to establish the defendants' access to the plaintiff's design.[7] Finally, the plaintiff argues that it does not matter if the plaintiff's design already existed (as in the design from the Book of Kells) "as long as he did not copy" the public domain design in creating his own design. (Docket No. 66 at page 9). In support of this proposition, the plaintiff relies upon Corwin v. Walt Disney Co., 468 F.3d 1329 (11th Cir. 2006). In that case, the plaintiff, Orrin Corwin, had inherited the estate of a free-lance artist named Mark Waters. At the request of

---

[7] Inasmuch as Kopf asserts that he completed the Kenmare design before he had access to the Moran design, a question of fact exists on the issue of access. Notwithstanding, in light of the Court's determination that the Kenmare knot does not contain any of the elements which distinguish it from the designs already in the public domain, this issue of fact does not preclude the grant of summary judgment. The Court need not address the various arguments raised with respect to the access issue.

Robert Jaffray, Waters had painted a rendering of a concept for an international theme park.[8] Corwin asserted that Jaffray had pitched the idea of an international theme park to the Walt Disney Company in 1962 or 1963. The plaintiff alleged that the EPCOT theme park, which opened in 1982, was copied from Water's illustration of Jaffray's concept. The Court held that the plaintiff was not able to demonstrate the defendant's access to Water's illustration. The Court noted that the defendants presented evidence of independent creation by tracing the development of EPCOT from the ideas for International Street and City of Tomorrow through Disney's participation in the 1964 World's Fair. Corwin, 468 F.3d. at 1144.

The Corwin case does not support the plaintiff's argument that he has a protectable copyright in the portions of the Moran design that were already in the public domain. In fact, the Court in Corwin noted that otherwise unprotectable elements of a work may only be protected by copyright law when they are arranged in a unique way. Corwin, 468 F.3d. at 1341-1342.[9] The

---

[8] Waters apparently retained ownership of the painting. Corwin registered the copyright for the painting in 2002. Corwin, 468 F.3d. at 1134.

[9] In addition, the Court in Corwin held:

> Similarly, *scenes a faire*, which include "[i]ncidents, characters, or settings that are indispensable or standard in the treatment of a given topic[,] are not copyrightable." Herzog, 193 F.3d at 1248; see also, e.g., Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir.) (observing that there is no protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop"); Evans v. Wallace Berrie & Co., 681 F.Supp. 813, 817 (S.D.Fla.1988) ("Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oysters or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization.").

plaintiff does not argue that the Moran design articulates the elements of the Book of Kells design (which were in the public domain) in any original or unique way. Although the plaintiff claims to have independently designed the Moran Knot, the Moran design has many features of the design in the Book of Kells. It is apparent to the ordinary observer that the Moran Knot is distinguished from the design in the Book of Kells by the fact that the Moran design cuts off the tips of the hearts so that they are not joined to the neighboring heart in the pattern, and that the tips of the triknots/triangle knots of the Moran design are pointed instead of rounded. If you modify the elements which distinguish the Moran Knot from the knot in the Book of Kells, you are left with the Kenmare Knot. It is apparent to the ordinary observer that the Kenmare Knot is virtually identical to the design in the Book of Kells. The modifications which the plaintiff alleges were made by the defendants to the Moran Knot (which upon the instant derivative claims are based), effectively removed those elements which distinguished the Moran Knot from the design in the Book of Kells. Thus, in designing the Kenmare Knot the defendants, in essence, removed the protectable elements of the Moran design. The plaintiff suggests that the similarity between the Kenmare Knot and the design from the Book of Kells was accidental, and that the defendants had merely modified the Moran design. However, the plaintiff has not presented any basis to conclude that it has a copyright in the elements of the design that were included in the Book of Kells, and thus, had been in the public domain for hundreds of years. Someone unfamiliar with the Moran Knot could certainly use the design from the Book of Kells. Having removed those elements unique to the Moran Knot, by accident or not, the defendants' design of the Kenmare Knot is virtually identical to the design in the public domain. Inasmuch as

---

Corwin, 468 F.3d. at 1341.

the Kenmare Knot does not contain any of the protected elements of the Moran Knot, the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work. Thus, summary judgment in favor of the defendants is appropriate with respect to the plaintiff's copyright infringement claims. Warner Bros. Inc. v. Am. Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983) (citations omitted); Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.), cert. den. 449 U.S. 841(1980).

## Conclusion

Based on the above, it is recommended that the motion for summary judgment as to the plaintiff's copyright infringement claim be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within 14 days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.

Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 10, 2010