UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID WILLIAM MORAN,

                    Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      05-CV-459S
DESIGNET INTERNATIONAL,
REG MEDICOTT SCHOPP,
RARU.COM, INC.,
KIMBERLY ANN SCHOPP,
ROBERT KOPF, ROMAN JURGA,
ELIZABETH CALI, and MICHAEL
SCHOPP,

                    Defendants.

## I. INTRODUCTION

Plaintiff, David William Moran, commenced this action against Defendants, deSignet International ("deSignet") and several of its employees, alleging claims for breach of contract and violations of the Copyright Act, 17 U.S.C. §§ 101 et seq. On March 19, 2010, this Court accepted the Honorable Hugh B. Scott's Report and Recommendation ("R&R"), which recommended summary judgment in favor of the Defendants. (Docket Nos. 70, 71.) Presently before this Court is Defendants' Motion for Attorney Fees pursuant to Section 505 of the Copyright Act. For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

### A. Facts[1]

On March 3, 2000, Moran emailed deSignet, a manufacturer and designer of wedding and engagement rings and bands, and asked if it would develop a wedding ring based on a design that he created. (Magistrate Scott's R&R, p. 2; Docket No. 70.) deSignet

---

[1]For a full discussion of the facts, see Judge Scott's Report and Recommendation, pp. 1-5.

agreed, but also asked Moran if it could purchase the design. (Id.) Moran declined the offer but, pursuant to their original agreement, presented his design to deSignet on March 4, 2000. (Id.) Soon thereafter, his design (the "Moran Knot"), was granted a copyright and registered with the Library of Congress, bearing the number "V Au-497-855." (Id., p. 1.) His design is pictured below.



(Id., p. 3)

Subsequently, on two separate occasions, in April of 2000 and January of 2002, Moran asserted that deSignet violated this copyright by offering for sale on its website a design it alternatively called "The Waterfront Knot" and "The Kenmore Knot." (Id., p. 5) That design appears as follows:



(Id.)

deSignet claimed that its design was not based on the Moran Knot but on a book entitled Celtic Art: The Methods of Construction, by George Bain. (Id., p. 2.) Bain's book depicts hundreds of Celtic designs which were originally contained in the "Book of Kells," an ancient Celtic text published around 800 A.D., and undisputedly in the public domain. (Id., p. 3.) Specifically, deSignet claimed its design was based on this knot, found in the Book of Kells:



(Id.)

In resolving Defendants' motion for summary judgment, Judge Scott ultimately found that many of the features of the Moran Knot were in the public domain and that "[i]f you modify the elements which distinguish the Moran Knot from the knot in the Book of Kells, you are left with the Kenmore Knot." (Id., p 12.) He further explained, "The modifications which [Moran] alleges were made by the defendants to the Moran Knot, effectively removed those elements which distinguished the Moran Knot from the design in the Book of Kells. (Id.) Finally, he concluded, "in designing the Kenmore Knot[,] the defendants, in essence, removed the protectable elements of the Moran design." (Id.) Thus, because DeSignet's design did not infringe on protectable elements of the Moran Knot, Judge Scott recommended, and this Court ordered, summary judgement in favor of the Defendants.

**B.     Procedural History**

Moran commenced this action by filing a complaint in this Court on June 29, 2005. (Docket No. 1.) On May 23, 2006, Defendants answered and filed a counterclaim against Moran. (Docket No. 5.) Judge Scott granted Moran leave to file an amended complaint on May 16, 2008, and Moran filed his new complaint eleven days later. (Docket Nos. 41, 44.) Defendants answered and re-asserted their counterclaim on June 16, 2008. (Docket No. 45.) Subsequently, on April 6, 2009, Defendants moved for summary judgment and Judge Scott issued a Report and Recommendation recommending that this Court grant the motion with respect to Moran's copyright claim on February 11, 2010. (Docket No. 70.)

3

Neither party objected to the R&R and  this Court agreed with the Judge's reasoning; thus it ordered summary judgment in favor of Defendants. (Docket No. 71.)

After mediation, the parties held a status conference where Moran withdrew his breach of contract claim and Defendants withdrew their counterclaim. (Docket No. 84.) Defendants' motion for attorney fees in the amount of $108,453.01 is all that remains of this litigation.

## III.  DISCUSSION

### A.    Legal Standard

Section 505 of the Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.[2]

17 U.S.C. § 505.

Costs and attorney fees for prevailing parties under § 505 "are not automatic." Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 117 (2d Cir. 2002). Rather, they are a matter for a district court's "equitable discretion." Id.; see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ("[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's

---

[2]There is no dispute that Defendants are the prevailing parties. Although at one time it was unclear whether successful defendants were entitled to attorney fees, it is now settled that "a defendant who prevails in a copyright action may be awarded attorney's fees under 17 U.S.C. § 505." Polsby  v. St. Martin's Press, Inc., 8 F. App'x. 90, 92 (2d Cir. 2001); see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (finding that prevailing defendants and plaintiffs should be treated with an "evenhanded" approach).

discretion."); 17 U.S.C. § 505 ("[T]he court *in its discretion may allow the recovery* of full costs[.]") (emphasis added).

"When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing Fogerty, 510 U.S. at 534, n. 19). These factors, which are not exclusive, and any others weighed by a district court, must be applied in a manner "faithful to the purposes of the Copyright Act." Fogerty, 510 U.S. at 525. Those purposes include encouraging the production of "original literary, artistic, and musical expression for the good of the public." Id. at 534, n. 19. In this Circuit, "[t]he third factor – objective unreasonableness – should be given substantial weight." Bryant, 603 F.3d at 144. "Only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." Silberstein v. Fox Entm't Grp., Inc., 536 F. Supp. 2d 440, 444 (S.D.N.Y.2008).

### 1.    Objective Reasonableness

As an initial matter, this court cannot conclude that most important element – objective unreasonableness – has been met.[3] The record establishes that Moran did have a copyright on his design and that Defendants created a very similar design and offered it for sale on their website. In fact, Judge Scott's R&R recognized the similarities in the two

---

[3]Defendants are not entitled to attorney fees merely because they prevailed on summary judgment. See Silberstein, 536 F. Supp. at 443. ("Prevailing parties are not entitled to fees merely because they have been successful on a motion to dismiss or for summary judgment. To do so would establish a per se entitlement of attorney's fees whenever issues pertaining to judgment are resolved against a copyright plaintiff. This is not a correct construction of the law.") (internal quotation marks and citations omitted.)

designs, but found that the they were all in the public domain. (See R&R, p. 13) ("[T]he similarity between the two works concerns only non-copyrightable elements of the plaintiff's work.") Such a conclusion required a close scrutiny of the two works and a careful division of their respective elements. As such, Moran's claim cannot be deemed objectively unreasonable.

Defendants' actions prior to this lawsuit further support the reasonableness of Moran's claim. First, when Moran initially presented his design to Defendants, they offered to purchase it, signaling to Moran that the work was original and not in the public domain. By making such an offer, it "would appear to indicate that defendants themselves did not view plaintiff's copyright claim as specious." Silberstein, 536 F. Supp. 2d at 444.

Second, when Moran first learned that Defendants were selling the "Waterfront Knot" in 2000, he contacted them, and citing his copyright for the work, asked them to remove it from their website. (Id., pp. 4-5.) Defendants complied with this request. (Id.) Although this fact has no bearing on the merits of Moran's claim, it does assist this Court in ascertaining Moran's mind set when he ultimately decided to file suit. His belief that he owned the copyright to his design must have been reinforced when Defendants complied with his request. Then, when he saw the same design reemerge on Defendants' website two years later, it was not unreasonable for him to conclude that, this time, he needed to file suit to protect what he believed was properly his. As such, it cannot be said that Moran's claim was "clearly without merit or otherwise patently devoid of legal or factual basis.[4] Silberstein, 536 F. Supp. 2d at 444.

---

[4]In this Court's view, such a finding must also lead to the conclusion that Moran's claim was not frivolous.

### 2. Bad Faith

Defendants, however, argue that Moran's claim was asserted in bad faith. "As the Second Circuit has elsewhere defined bad faith, the term is somewhat different than objective unreasonableness." Canal+ Image UK Ltd. v. Lutvak,---- F. Supp. 2d ----, No. 10 Civ. 1536 2011, WL 2396961, at *9 (S.D.N.Y. June 8, 2011). "In order to award bad faith fees, the district court must find that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay." Id. (quoting Kerin v. United States Postal Service, 218 F.3d 185, 190 (2d Cir.2000). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Id. (quoting Sierra Club v. United States Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir.1985)).

Defendants argue that Moran's work was not original and that his copyright is fraudulent. They contend that they have found a design that is true source of Moran's knot in a book by Aiden Meehan ("Meehan Knot"). (Moore Affidavit, ¶ 3; Docket No. 85-2.) A representation of the Meehan Knot follows:



(Schopp Affidavit, Exhibit A; Docket No. 85-3)

Defendants argue that Moran doubled the Meehan Knot, flipped it on its side and combined the two to form the Moran Knot, thus rendering it a derivative work subject to more limited protections under the Copyright Act. They also point to a letter that they recently discovered from Reg Medicott Schopp, President of deSignet, to his attorney, in

which Schopp indicates that Moran told him in 2000 that the inspiration for his knot came from a book about Celtic Knots. (Schopp Affidavit, Exhibit E, Docket No. 62-6.) This is contrary to Moran's claim throughout this litigation that he arrived at the design independently.

Yet, these speculative allegations, based partially on hearsay, do not outweigh the main piece of evidence in favor of the originality of Moran's design: his copyright. <u>See</u> <u>Boisson v. Banian, Ltd.</u>, 273 F.3d 262, 268. ("Plaintiffs' certificates of registration constitute prima facie evidence of the validity not only of their copyrights, but also of the originality of their works.") Further, because "[a]ll creative works draw on the common wellspring that is the public domain," <u>see</u> <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.</u>, 338 F.3d 127, 132 (2d Cir. 2003), this Court is unpersuaded that Moran's alleged manipulation of the Meehan Knot necessarily renders his claim meritless or frivolous.

Finally, Defendants do not, as they must, point to any specific improper motive that inspired Moran to bring this suit. In fact, the only evidence concerning Moran's motivation comes from Moran himself, who has stated that his only goal was to keep the design exclusive to his family. (Moran Deposition, p. 73: Docket No. 66-3.)

### 3.    Remaining Factors

Defendants also argue that they are entitled to attorney fees due to the small size of their company and the financial burden that this litigation caused.

Compensating defendants, and by extension deterring plaintiffs, may be proper where a defendant is required to defend against willful infringement or objectively unreasonably claims. <u>See</u> <u>U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.</u>, No. 04 Civ. 6189, 2008 WL 3906889, at *17 (S.D.N.Y. Aug. 21, 2008) (collecting cases); <u>Muller v.</u>

Twentieth Century Fox Film Corp., No. 08 Civ. 2550, 2011 WL 3678712, at *3 (S.D.N.Y. Aug. 22, 2011). However, this Court finds that a fee award in this case, where a copyright holder filed an objectively reasonable claim, would not be faithful to the purposes of the Copyright Act, which is meant to encourage the origination of creative rights. See Matthew Bender & Co. Inc,. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001). ("[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."). In other words, Defendants' financial position, in this Court's equitable discretion, does not overcome the more significant factors that weigh in favor of refusing a fee award. Consequently, Defendants' motion is denied.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Attorney Fees  (Docket No. 85)  is DENIED.

FURTHER, that the Clerk of the Court shall close this case.


Dated:        November 18, 2011
              Buffalo, New York

                                          /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                              Chief Judge
                                       United States District Court